# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **BOBBY GARMON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CASE NO.  5:14-CV-1108-SLB** |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Bobby Garmon brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security denying his applications for a period of disability, disability insurance benefits [DIB], and supplemental security income [SSI].  After review of the record, the parties' submissions, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Mr. Garmon filed an application for a period of disability and DIB on September 7, 2011, (doc. 6-6 at R.167),[1] and an application for SSI on September 21, 2011, (*id*. at R.169), alleging a disability onset date of January 1, 2010, (*id*. at R.167, R.169).[2]  The applications

---

[1]Reference to a document number, ("Doc. __"), refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ("R.__").

[2]The ALJ found that the applications were filed on September 2, 2011.  (Doc. 6-3 at 20.)

were initially denied on December 13, 2011.  (Doc. 6-5 at R.62.)  Thereafter, Mr. Garmon requested a hearing before an Administrative Law Judge [ALJ], which was held on September 24, 2012.  (*Id*. at R.69-70; *see* doc. 6-3 at R.33.)  Following the hearing, the ALJ found that Mr. Garmon was not disabled; therefore, he denied Mr. Garmon's applications for a period of disability, DIB, and SSI on December 13, 2012.  (Doc. 6-3 at R.28.)

Mr. Garmon requested review of the ALJ's decision by the Appeals Council.  (*See id*. at R.14.)  On May 9, 2014, the Appeals Council denied the request for review, stating that it had "found no reason under [its] rules to review the [ALJ's] decision." (*Id*. at R.1.) Therefore, "the [ALJ's] decision is the final decision of the Commissioner of Social Security in [Mr. Garmon's] case."  (*Id*.)

Mr. Garmon filed an appeal in this court on June 11, 2014.  (Doc. 1.)

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual findings.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to

2

determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability, DIB, and/or SSI. *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *see Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB and SSI benefits] if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

3

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(C)(1); *see also* 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A).

The specific steps in the evaluation process in this case are as follows:

### 1.   Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).  The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[3] 20 C.F.R. § 404.1572; 20 C.F.R. § 416.972.  If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or his age, education, and work experience.

---

[3]The regulations state:

(a) *Substantial work activity*.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*.  Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572; 20 C.F.R. § 416.972.

20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b).  "Under the first step, the claimant has the burden to show that [he] is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (2012).[4]

The ALJ found that Mr. Garmon had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date.  (Doc. 6-3 at R.22.)

### 2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3);  42 U.S.C. § 1382c(a)(3)(D).  The regulations provide:  "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."  20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).  "An impairment can be considered as not severe only

_____

[4]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***."  11th Cir. R. 36-2 (emphasis added).

if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a); 20 C.F.R. § 416.921(a).  A complainant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling.  *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523; 20 C.F.R. §416.923.  A claimant has the burden to show that he has a severe impairment or combination of impairments.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Garmon had "the following severe impairments:  disorders of the back, cervicalgia, and blindness in his left eye."  (Doc. 6-3 at R.22.)  He also found that Mr. Garmon's "medically determinable mental impairment of anxiety/depression, considered singly and in combination, does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." (*Id.*)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets or is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity.   20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404,

6

Subpart P, Appendix 1 [The Listings].  If the claimant's impairment meets or equals an impairment listed in the regulations, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d).  The claimant has the burden of proving that his impairment meets or equals the criteria contained in one of the Listings.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Garmon did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Doc. 6-3 at R.23.)

### 4.  Residual Functional Capacity and Past Relevant Work

If the impairment or combination of impairments does not meet or equal the criteria of a Listing, the claimant must prove that his impairment or combination of impairments prevents him from performing his past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); 20 C.F. R. § 416.920(a)(4)(iv), (f).  At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity [RFC] with the physical and mental demands of [the claimant's] past relevant work.  20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.960(b).  "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it.  20 C.F.R. § 404.1560(b)(1); 20 C.F.R. § 416.960(b)(1).  If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled.  20 C.F.R.

§ 404.1560(e); 20 C.F.R. § 416.920(e).  The claimant bears the burden of establishing that the impairment or combination or impairments prevents him from performing past work. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

Based on his "careful consideration of the entire record," the ALJ found that Mr. Garmon could perform a limited range of light work; he found:

> [W]ith a limited ability to read and write, the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b).  He can occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds.  With normal breaks, he can stand and/or walk for six hours and sit for six hours in an eight-hour workday.  He would have no limitations working with foot or hand controls and can occasionally balance, stoop, and crouch.  He can occasionally climb ramps and stairs, but should not perform work activity that requires the use of ladders, ropes, or scaffolds.  With visual limitations, he should not work with hazardous machinery and should not work at unprotected heights.

(Doc. 6-3 at R.23.)  Based on the RFC, the ALJ found that Mr. Garmon could not perform his past relevant work as a diesel mechanic.  (*Id*. at R.27.)

### 5.  Other Work in the National Economy

If the claimant establishes that he is unable to perform his past relevant work, the Commissioner must show that the claimant – in light of his RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy.  *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 404.1520(c)(1); 20 C.F.R. § 416.920(c)(1).   The regulations provide:

> If we find that your [RFC] is not enough to enable you to do any of your past relevant work, we will use the same [RFC] assessment we used to decide if you could do your past relevant work when we decide if you can adjust to

any other work.  We will look at your ability to adjust to other work by considering your [RFC] and your vocational factors of age, education, and work experience.  Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); 20 C.F. R. § 416.960(c)(1).  If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled.  20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).   If, however, the Commissioner finds that the claimant can perform other work, the claimant has the burden to prove he is not capable of performing such other work.

The ALJ found that Mr. Garmon, who was born in 1958, was "an individual closely approaching advanced age . . . on the alleged disability onset date." (Doc. 6-3 at R.27.)  He had a limited education and had "acquired work skills from past relevant work." (*Id*.)  The ALJ consulted a vocational expert [VE]; the VE testified that an individual with Mr. Garmon's RFC and vocational factors could perform "jobs existing in significant numbers in the national economy," including parking lot attendant, mechanic marker, and cushion filler. (*Id*. at R.27-28, R.54-56.)  Based on this testimony, the ALJ found Mr. Garmon could make as successful adjustment to perform other work.  (*Id*. at R.27-28.)

Therefore, the ALJ found that Mr. Garmon had not been under a disability at any time from January 1, 2010, the alleged onset date, through December 13, 2012, the date of his decision.  (*Id*. at R.28.)

## B.  MR. GARMON'S APPEAL

Mr. Garmon raises a single issue on appeal:  "The ALJ failed to properly evaluate Garmon's subjective pain complaints in accordance with the Eleventh Circuit's three[-]part pain standard."  (Doc. 8 at 8.)  For the reasons set forth below, the court finds that the Commissioner's decision is due to be affirmed.

In this Circuit –

[W]here, as here, a plaintiff alleges disability because of pain, he must meet additional criteria.  In this circuit, "a three[-] part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard[5] require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  *See* 20 C.F.R. §§

---

[5]*Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987) ].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir.1991)(parenthetical information omitted).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three[-]part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

> Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

>> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

> *Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

*Crow v. Colvin*, 36 F. Supp. 3d 1255, 1259 (N.D. Ala. 2014)(original footnote omitted; footnote added).  "If proof of disability is based upon subjective evidence and a credibility determination is, therefore, critical to the decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  *Duval v. Comm'r of Soc. Sec.*, 628 Fed. Appx. 703, 711 (11th Cir. 2015)(quoting *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).

The ALJ found Mr. Garmon's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning

11

the intensity, persistence and limiting effects of these symptoms are not credible to the extent

they are inconsistent with the [RFC]." (Doc. 6-3 at 24.) As grounds for this finding, the ALJ

stated:

> The claimant has alleged an inability to work due to his impairments, but reported a significant level of daily activities when he completed his Function Report – Adult in September 2011. He showed no limitations in performing his personal care and drove short distances, such as to the store, once or twice a day. Hobbies and interests included hunting, fishing, and watching television, but he reported he was unable to hunt and had only fished once in the past three months, because he could not sit very long. He spends time with his children and grandchildren, stating they cookout on the weekends and he visits his mother in the nursing home once a week (Exhibit B3E). While the claimant has reported some limitations in performing his daily activities, the undersigned finds he has continued to show a level of functioning, inconsistent with disabling limitations. Furthermore, medical evidence has not supported the severity of limitations he alleges.
>
> Evidence of record shows the claimant has a significant history of treatment for back pain with records showing he initially injured his cervical spine in 2006. Subsequently, he underwent a C5-6 anterior cervical diskectomy and fusion in May 2006 with improvement noted (Exhibit B1F). He did well for the first six months, but deterioration with neck pain and left arm pain was noted when he returned to Neurosurgical Associates in March 2008. At that time, he reported over the past several months he had had advancing intermittent left arm pain and paresthesias involving his left hand. A recent MRI showed advancing spondylosis, especially on the left at C6-7. He also had mild degenerative disease at C7-T1, T1-2, and T2-3. Conservative care, including physical therapy, continued to be recommended, but the claimant was not always compliant with the recommended treatment (Exhibits B2F, B3F and B4F).
>
> Although the claimant was admitted to the hospital in August 2008, with a possible heat stroke, there is little evidence of additional treatment for his back pain until February 2011, when records from Dr. Turnley at Orthopaedic Specialists of Alabama show he had not been seen in a while. He was noted to have persistent cervicalgia, but treatment records show had used Lortab and Voltaran that enabled him to be more functional and do his job. A severity of

limitations consistent with the reports by the claimant were not evidenced. On exam, gross motor and sensory in his upper extremities remained intact and his medications were refilled. In September 2011, he returned for a follow-up and continued to report pain. His medications were refilled and he returned for an additional visit in March 2012, stating he had done fairly well on the medication. However, he reported he sometimes had bad days, depending on what he did. Dr. Turnley noted the claimant's persistent cervicalgia and cervical degeneration, but opined he was not acutely ill and ambulated around the exam room. While he was noted to hold his neck without the normal cervical lordosis, gross motor and sensory was unchanged in his upper extremities. His medications were continued (Exhibits B5F and B12F).

Records also show the claimant returned to Neurosurgical Associates in February 2012. A significant break in treatment was evidenced, with notes showing he had last been seen at that facility in March 2008. The claimant reported he had developed more popping and cracking in his neck over the last six months. He continued to report some left shoulder and arm pain and complained of significant lumbosacral pain. Over the past three months, he reported he had developed worsening right hip pain and numbness in his leg. He also reported several falls and one episode when he was unable to get up without help. However, his exam failed to show significant limitations. Strength in his upper and lower extremities was 5/5 and straight leg raising test was negative, but mild foot drop and decreased pinprick in his right foot was noted. Additional testing included an MRI of his lumbar spine, which showed small disc protrusions above the previous diskectomy level, mild stenosis at L3-4, and discogenic edema at L1-2 with enhancement. In March 2012, the claimant returned with continuing complaints of low back pain with radiation into his right lower extremity. However, exam at this time also failed to support significant limitations. He ambulated into and out of the exam room with a normal heel to toe gait pattern and there was no evidence of focal atrophy or abnormal tone. He had some tenderness to palpation along the lower lumbar paraspinals and decreased range of motion with forward flexion at the lumbar spine, secondary to discomfort. Extremities showed no evidence of clubbing, cyanosis, or edema and his neurological exam demonstrated functional strength with normal reflexes. Additional testing included motor nerve conduction studies, sensory nerve conduction studies, and needle EMG studies, but interpretation and conclusions only showed evidence consistent with irritation of the L5 nerve roots bilaterally, with the right to a greater extent that the left. There was no evidence to suggest acute radiculopathy, significant generalized neuropathy, or myopathy (Exhibit B13F).

In assessing the claimant's limitations, the state agency requested a consultative physical examination that was performed by Dr. Moizuddin on December 6, 2011.  The claimant reported his history of back pain and also the history of his injury to his left eye.  He reported he has lost almost all the sight in that eye, but could see light and dark.  On exam, the claimant was 6 feet 6 inches tall and weighed 212 pounds.  Visual acuity – uncorrected corrected showed OD: 20/30, OS: 20/100, and OU: 20/30.  Exam of his neck was normal and lung auscultation showed no rales or rhonchi, no wheezing, and no rubs. Heart auscultation showed normal S1 and S2, with no murmur, gallop, rubs, or clicks.  Muscle strength was 5/5 in all groups and he could squat 3/4 way. He was unable to heel walk, but could toe walk.  There was no cyanosis, clubbing, or edema in his extremities.  Gait was normal and he used no assistive device.  Dr. Moizuddin noted the claimant's chronic neck pain with radiation to his left arm and need for a fusion.  He also noted degenerative disc disease, blindness in his left eye, anxiety, and depression, but did not opine the claimant experienced limitations that significantly limited his level of functioning (Exhibit B8F).

X-rays of the claimant's lumbar spine were also requested by the state agency and performed in December 2011.  While findings were supportive of the claimant's history of back surgery, only moderate spondylosis, L1-2 degenerative disc disease, and minimal upper lumbar scoliosis, inconsistent with the severity of limitations alleged by the claimant (Exhibit B7F).

In December 2011, the state agency medical consultant opined the claimant's psychological impairments were not severe, with no more than mild limitations (Exhibit B10F) and considerable weight is given to this opinion, as evidence has not supported significant psychological limitations.  In fact, there is no evidence that the claimant sought treatment from a mental health source. Although, he was admitted to the hospital with chest pain in July 2011 and his problems were determined to be related to anxiety, he had recently taken on the roll of primary care giver for his mother, who had multiple health issues. There is no evidence that his problems persisted or that he continued to experience problems that significantly limited his level of functioning (Exhibit B6F).  It is also noted he continued to show a level of functioning inconsistent with significant psychological limitations, with records showing he enjoyed spending time with his children and grandchildren on the weekends.

Regarding his physical impairments, the state agency medical consultant opined the claimant retained the residual functional capacity to perform a light

level of exertional activity and considerable weight is also given to this opinion.  While evidence shows the claimant experiences significant visual limitations, he has shown an ability to work with those limitations in the past and there is no evidence to show his limitations have increased or would result in more significant limitations that would affect his level of functioning.  The claimant's main problems seem to be related to his back pain.  While he has a history of surgeries for his back impairments, improvement was noted.  There is an extended period of time with no evidence of treatment.  In fact, when the claimant returned for treatment, at least two of his treating sources noted he had not been seen for an extended period of time.  Objective findings relevant to his alleged disability have also failed to support the severity of limitations he alleges, showing only mild and moderate limitations.  The consultative examination by Dr. Moizuddin also failed to support significant limitations and those findings are accepted by the undersigned.  It is also noted that Dr. Moizuddin did not suggest the claimant was experiencing significant functional limitations.

In review of the record, the undersigned finds the claimant is not fully credible in his allegations.  While he may experience some limitation, he has continued to show a significant level of daily activity, inconsistent with disabling limitations.  He performed his personal care without assistance, drove, shopped, and was involved with the activities of his children and grandchildren.  Based on the record as a whole, the undersigned finds that even considering the combined effects of the claimant's impairments with resulting limitations, he retains the ability to perform work activity at the light level of exertion with the limitations previously noted.

(Doc. 6-3 at R.24-27.)

As set forth above, the ALJ found Mr. Garmon's testimony not fully credible regarding the intensity and persistence of his pain, and how his pain limited his ability to work.  "If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for

work." *Duval*, 628 Fed. Appx. at 711 (citing 20 C.F.R. §§ 404.1529(c)(1), 416.927(c)(1)).

The ALJ based his credibility determination on the following factors:

> 1.   The lack of evidence of significant limitations on examination by treating and consulting physicians and/or the objective medical evidence.

> 2.   Following surgeries that predate the alleged onset date, conservative treatment, including effective medication, and Mr. Garmon's failure to fully comply with treating physicians' recommended treatment.

> 3.   A break in medical treatment for neck and back pain from October 2008 to February 2011.

> 4.   A significant level of daily activity.

(*See* doc. 6-3 at R.24-27.)

Of the reasons given for finding Mr. Garmon's testimony of his pain to be not fully credible, Mr. Garmon challenges only three.  He argues, "The ALJ's findings are in error because his analysis fails to properly apply the [pain] standard, and [two of] his reasons for finding [Mr.] Garmon to be "not credible" are not supported by substantial evidence." (Doc. 8 at 9.)  Specifically, Mr. Garmon contends:  (1) "the record contains multiple diagnostic studies and interpretations from physicians which objectively confirm the *severity* of the plaintiff's pain," (*id*. [emphasis added]); (2) his "mild activities do not minimize his allegations of significant work[-]related limitations and certainly do not show that he would be capable of performing light level work on a regular and continuing basis," (*id*. at 10); and (3) the ALJ improperly considered the consulting physician's silence regarding whether Mr. Garmon "was experiencing significant functional limitations," (*id*. at 12).  He does not

16

challenge the other reasons, set forth above, that the ALJ gave for discounting his pain testimony, which the court finds are supported by substantial evidence.[6]

The court has carefully considered Mr. Garmon's arguments and the entire record, and it finds that substantial evidence supports the ALJ's finding that Mr. Garmon's complaints of disabling pain are not fully credible.

### 1.  Objective Medical Evidence That Confirms the Severity of the Alleged Pain

Mr. Garmon argues:

Part (2) of the [pain] standard[7] is met in this case because the record contains multiple diagnostic studies and interpretations from physicians which objectively confirm the severity of the plaintiff's pain.  Specifically, Dr. Maher reviewed the plaintiff's cervical MRI from February 8, 2008 and explained that this study showed the previous fusion at C5-6, but he also believed that it showed "**significant**" and "**severe**" abnormalities at C6-7 (Tr. 240)(emphasis added).  Dr. Maher believed that the plaintiff's worsening left arm pain was likely due to the degeneration at C6-7 (Tr. 241).  Further, regarding the lumbar spine, X-rays revealed a previous surgical fusion and moderate spondylosis (Tr. 315).  A Lumbar MRI from February 27, 2012 showed disc protrusions and facet arthritis at multiple levels while the NCS/EMG from March 14, 2012 established evidence of irritation of the L5 nerve root (Tr. 351, 355-356).  Additionally, Dr. Moizuddin found diminished range of motion related to both the cervical and lumbar spine (Tr. 317), and he believed that Garmon needed an additional fusion at C6-7 (Tr. 321).[8]  As such, the objective evidence in this

---

[6](*See* doc. 6-8 at R.237-43, R.247, R.255-60, R.271-78, R.315, R.317-21, R.323-29, R.347, R.349; doc. 6-9 at R.351-56.)

[7]Part 2 of the pain standard allows a claimant to prove disability based on pain by showing "objective medical evidence that confirms the severity of the alleged pain arising from [the claimant's] condition."  *Holt*, 921 F.2d at 1223.

[8]The record shows that Dr. Moizuddin's report states Mr. Garmon had been advised to have a fusion of C6/7, but that he had not had it done.  (Doc. 6-8 at 319.)  On March 20, 2008, P. Colby Maher, M.D., Mr. Garmon's treating neurosurgeon, stated he explained to

case confirms the severity of the plaintiff's alleged pain such that his complaints should have been found to be credible.

(Doc. 8 at 9 [footnote added].)

The regulations define "objective medical evidence" as "medical signs and laboratory findings as defined in § 404.1528 (b) and (c)," and 20 C.F.R. § 416.928(b) and (c).  20 C.F.R. §§ 404.1512(b)(1)(i), 416.929(b)(1)(i).  "Objective medical evidence" does not include "other evidence from medical source, such as medical history, opinions, and statements about treatment [a claimant has] received."  20 C.F.R. §§ 404.1512(b)(1)(ii), 416.912(b)(1)(ii). "*Signs* are anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements (symptoms).[9]  *Signs* must be shown by medically acceptable clinical diagnostic techniques."  20 C.F.R. §§ 404.1528(b), 416.928(b)(emphasis and footnote added).  *Laboratory findings* are anatomical, physiological, or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic techniques.  Some of these diagnostic techniques include chemical tests, electrophysiological

---

Mr. Garmon that "extending his fusion to the C6/7 level would likely alleviate some of his left arm symptoms, but it would be difficult to predict how it [would] affect his neck pain and headache situation," and he recommended Mr. Garmon "consider fusing the C6/7 segment only if Mr. Garmon "reach[ed] a point of incapacitation."  (Doc. 6-8 at R.237.)  On February 20, 2012, Dr. Maher noted that he did "not think there [had] been a major change in his cervical spine as of yet," and he did not recommend fusing the C6/7 segment.  (Doc. 6-9 at R.354.)

[9]"*Symptoms* are your own description of your physical or mental impairment."  20 C.F.R. §§ 404.1528(a), 416.928(a)(emphasis added).

studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests." 20 C.F.R. §§ 404.1528(c);  416.928(c)(emphasis added).

The evidence cited by Mr. Garmon is not "objective medical evidence" that proves the severity of his alleged pain.  This evidence shows that he has a medical impairment; it does not show how he is limited by pain caused by his impairments.  Indeed, individuals with the same medical impairment may not be functionally limited to the same extent.

> Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone; *e.g.*, someone with a low back disorder may be fully capable of the physical demands consistent with those of sustained medium work activity, but another person with the same disorder, because of pain, may not be capable of more than the physical demands consistent with those of light work activity on a sustained basis.

20 C.F.R. §§ 404.1545(e); 416.945(e).  "The relationship between impairment and disability remains both complex and difficult, if not impossible, to predict.  The same level of injury is in no way predictive of an affected individual's ability to participate in major life functions (including work)."  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(internal quotations and citation omitted).

The  "objective medical evidence" and physician opinions cited by Garmon as evidence of the ***severity*** of his pain do not qualify as "objective evidence medical evidence" and/or do not prove the ***severity*** – intensity, persistence, and functional limitations – of his pain. The laboratory findings – MRI, x-ray, EMG – establish that Mr. Garmon has a medical condition that could cause disabling pain, but they do not prove that Mr. Garmon,

19

individually, suffers from pain so severe as to be disabling.  Similarly the signs of reduced range of motion support Mr. Garmon's testimony that he has pain, but it does not prove the intensity, persistence, or functional limitations caused by that pain..

The court finds no error in the ALJ's finding that Mr. Garmon satisfied the Eleventh Circuit's pain standard by establishing that the record contains "evidence of an underlying medical condition[ ] and . . . [this] objectively determined [underlying] medical condition can reasonably be expected to give rise to the claimed pain," *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)(citing *Holt*, 921 F.2d at 1223), and by not finding that the objective evidence confirmed the severity of his alleged pain.

Therefore, the court turns to the issue of whether the ALJ properly decided that Mr. Garmon's pain was not disabling.

## 2. Daily Activities

Mr. Garmon argues:

> [T]he ALJ impeached the plaintiff's credibility due to his activities of daily living as reported in his Function Report – Adult (Exhibit 3E) that was completed in September 2011 (Tr. 193-200). The ALJ felt that the report showed "a significant level of daily activities" which was inconsistent with disabling limitations (Tr. 24).
>
> Although the ALJ was correct that Garmon reported being able to perform his personal care, drive short distances, go fishing, watch television, spend time with his children and grandchildren, and visit his mother in a nursing home, those mild activities do not minimize his allegations of significant work related limitations and certainly do not show that he would be capable of performing light level work on a regular and continuing basis . . . .

(Doc. 8 at 10 [footnote omitted].)   The Commissioner responded:

> The ALJ . . . considered Plaintiff's reported daily activities in assessing the credibility of his subjective complaints (Tr. 24).  Although not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as alleged.  See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Social Security Ruling (SSR) 96-7p, 1996 WL 374186 (S.S.A.) . . . .  As the ALJ noted, Plaintiff reported in a September 2011 Function Report that he had no limitations in performing personal care activities, such as dressing and bathing, and drove short distances, such as to the store, once or twice a day (Tr. 24, 193-94).  The ALJ also noted Plaintiff reported spending time with his children and grandchildren, holding cookouts on weekends, and visiting his mother once a week (Tr. 24, 197).  The ALJ additionally acknowledged that Plaintiff reported his hobbies included hunting, fishing, and watching television, but he was no longer able to hunt and could not fish often due to sitting limitations (Tr. 24, 197). As the ALJ explained, such activities reflected some limitations, but not disabling limitations (Tr. 24).

(Doc. 9 at 9.)

A claimant's daily activities are appropriate considerations in determining whether a claimant is disabled by virtue of functional limitations caused by his subjective symptoms, including pain.  20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).  The ALJ may properly rely "on [Mr. Garmon's] reported daily activities as one factor to discredit his statements of disabling pain."  *See Seagle v. Colvin*, No. 2:15-CV-0538-LSC, 2016 WL 1613053, at *6 (N.D. Ala. Apr. 22, 2016).(citing *Majkut v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 660, 663 (11th Cir. 2010); *Harrison v. Comm'r Soc. Sec.,* 569 Fed. Appx. 874, 880 (11th Cir. 2009)).  The ALJ found that Mr. Garmon's "level of functioning" as demonstrated by his daily activities, was "inconsistent with disabling limitations."  The activities noted by the ALJ included picking up and holding for a few minutes his 20-pound granddaughter, riding a lawn mower for a few

minutes, driving short distances once or twice every day, visiting his mother in a nursing home once a week, having family cook-outs on weekends, and attending to all his personal care needs.  Based on the exertion required by these activities and the fact that Mr. Garmon testified to regular and continuous engagement in these activities, the court finds that the ALJ's determination that Mr. Garmon's daily activities were inconsistent with his testimony regarding functional limitations caused by his pain is supported by substantial evidence.

In this case, as set forth above, the ALJ did not decide that, standing alone, Mr. Garmon's limited daily activities were sufficient to discredit his pain regarding the intensity, persistence and limiting effects of pain caused by his impairments.  In addition to finding his daily activities inconsistent with the alleged severity of his pain – pain that was 6/10 or 7/10 causing Mr. Garmon to be unable to sit for longer than 30 minutes at a time and his need to lie down a couple of times a day, the ALJ found that the "medical evidence [did] not support[ ] the severity of the limitations he alleges."  (Doc. 6-3 at 24; *see also* doc. 9 at 11.) Therefore, the court finds that "even without the ALJ's consideration of [Mr. Garmon's] daily activities, there was ample evidence undermining [his] credibility, . . . such as [his] limited and conservative medical treatment [and] normal examination findings . . . .  [Mr. Garmon] does not challenge the ALJ's use of any of that evidence." *Seagle*, 2016 WL 1613053, at *6 (citing *Wilson v. Comm'r of Soc. Sec.*, 500 Fed. Appx. 857, 859-60 (11th Cir. 2012)).

The court finds no reversible error in the ALJ's consideration of Mr. Garmon's daily activities as a factor, but not the sole factor, in determining the credibility of Mr. Garmon's statements regarding his functional limitations caused by pain.

### 3. Dr. Mouizuddin's Consultative Examination

Of the ALJ's discussion of the medical evidence, Mr. Garmon takes issue only with his discussion of the consultative examination performed by Samia Sana Moizuddin, M.D. (*See* doc. 8 at 12-13; *see also* doc. 6-8 at R.316-21.)  He argues:

> [T]he ALJ discredited Garmon's credibility reasoning that "[t]he consultative examination by Dr. Mouizuddin also failed to support significant limitations and those findings are accepted by the undersigned" (Tr. 26).  This rationale is incorrect because Dr. Moizuddin's physical exam showed significantly diminished range of motion of the cervical and lumbar spine (Tr. 317).  Further, Dr. Moizuddin opined that Garmon needed an additional surgical fusion of the cervical spine (Tr. 321).  Therefore, the ALJ's conclusion regarding Dr. Moizuddin's findings results in speculation.

> The ALJ felt that it was significant that Dr. Moizuddin "did not opine the claimant experienced limitations that significantly limited his level of functioning" (Tr. 26).  He further stated in his rationale, "[i]t is also noted that Dr. Moizuddin did not suggest the claimant was experiencing significant functional limitations" (Tr. 26-27).  This rationale is improper as the ALJ relied on the physicians' silence regarding the plaintiff's functional capacity.

(Doc. 8 at 12.)  The Commissioner responded:

> Plaintiff's statement . . . ignores the rest of Dr. Moizuddin's exam findings.  Dr. Moizuddin also found full range of motion in all upper and lower extremity joints, normal neck findings despite the cervical range of motion testing, full 5/5 muscle strength everywhere, normal muscle tone and deep tendon reflexes, an ability to squat three-quarters of the way and toe walk, and normal neurological testing, including normal gait (Tr. 317-18, 320-21).  Such findings are consistent with the ALJ's statement that Dr. Moizuddin's exam failed to support significant limitations (Tr. 26).  Plaintiff additionally asserts

Dr. Moizuddin opined Plaintiff needed an additional surgical fusion. Pl.'s Br. at 12. The ALJ, however, acknowledged Dr. Moizuddin included in his impression that Plaintiff had chronic neck pain that "needs fusion," an apparent recitation of Plaintiff's report as part of his medical history that he had received such a recommendation (Tr. 26, 319, 321).

Plaintiff additionally takes issue with the ALJ's observation that Dr. Moizuddin did not opine Plaintiff experienced significant functional limitations. Pl.'s Br. at 12. Plaintiff cites Lamb v. Bowen, 847 F.2d 698 (11th Cir. 1988), for the proposition that an ALJ should not consider a physician's silence. Pl.'s Br. at 12. Plaintiff relies on a portion of the Lamb opinion where the court acknowledged that a treating physician was silent on any type of work other than the claimant's former employment, and therefore no inference should be made from that silence concerning whether the physician would restrict or recommend "light work" for the claimant. See Lamb, 847 F.2d at 703. However, in Lamb, the treating physician wrote a letter stating the claimant's activity was restricted to the degree it was not compatible with his previous type of employment, and another treating physician found claimant was permanently unemployable. See id. at 700, 703. The decision in Lamb is thus distinguishable from Plaintiff's case because the treating physicians in Lamb noted restrictions on the claimant's activities, whereas here none of Plaintiff's treating or examining physicians limited his activities in any way (see generally Tr. 271, 317-21, 347-49, 353-57). See Stanton v. Astrue, No. 3:07-cv-015-J-TEM, 2008 WL 725595, at *4 (M.D. Fla. March 17, 2008) (unpublished disposition) (persuasively finding the Eleventh Circuit's decision in Lamb was not applicable to a situation where no treating source limited a claimant's activities in any way).

(Doc. 9 at 11-13.)

### a. Dr. Moizuddin's Findings

The ALJ found that [t]he consultative examination by Dr. Moizuddin . . . failed to support significant limitations." (Doc. 6-3 at R.26.) He noted that, on examination, Dr. Moizuddin had found Mr. Garmon had –

[m]uscle strength [of] 5/5 in all groups and he could squat 3/4 way. He was unable to heel walk, but could toe walk. There was no cyanosis, clubbing, or

edema in his extremities.  Gait was normal and he used no assistive device. Dr. Moizuddin noted the claimant's chronic neck pain with radiation to his left arm and need for a fusion.  He also noted degenerative disc disease, blindness in his left eye, anxiety, and depression, but did not opine the claimant experienced limitations that significantly limited his level of functioning (Exhibit B8F)."

(*Id.*)  Dr. Moizuddin also found Mr. Garmon had a limited range of motion in his cervical spine and his dorsolumbar spine, (doc. 6-8 at R.317), and he had received a recommendation for a second neck fusion, (*id*. at R.319).  According to the ALJ, an x-ray of Mr. Garmon's lumbar spine at the same time, December 2011, showed "only moderate spondylosis, L1-2 degenerative disc disease, and minimal upper lumbar scoliosis."  (Doc. 6-3 at R.26; *see* doc. 6-8 at 315.)  The ALJ also noted that, in March 2012, a physician with Neurosurgical Associates, determined that Mr. Garmon "had some tenderness to palpation along the lower lumbar paraspinals and decreased range of motion with forward flexion at the lumbar spine, secondary to discomfort."  (Doc. 6-3 at 25; *see* doc. 6-8 at 355.)

After considering the record as a whole, the court finds the ALJ's finding, that Dr. Moizuddin's report did not support a finding of significant limitations based on alleged pain, is supported by substantial evidence.

### b.  Dr. Moizuddin's Silence

"When a doctor's silence about a claimant's ability to work is subject to competing inferences, . . . no inference should be drawn from that silence."  *Clyburn v. Comm'r, Soc.*

*Sec. Admin.*, 555 Fed. Appx. 892, 894 (11th Cir. 2014)(citing *Lamb v. Bowen,* 847 F.2d 698,

703 (11th Cir. 1988).

> [T]he lack of objective medical evidence in itself is inconclusive, *Elam*, 921
> F.2d at 1215, and a physician's silence alone is also indeterminate.  *See Lamb*,
> 847 F.2d at 703.  However, when the medical evidence lacks both objective
> medical proof as well as affirmative statements of disability by a physician, the
> evidence tends to undermine Plaintiff's claim of disability.  *See Harris v.
> Astrue*, 2011 WL 5358707, at *6 (M.D. Fla. Nov. 3, 2011)("[N]o inference can
> be drawn from silence.  However, since the [claimant] has the burden to
> demonstrate that [s]he is disabled, the absence of any supporting statement
> from a treating physician is noteworthy.").

*Robinson v. Astrue*, No. 3:11-CV-3102-RDP, 2012 WL 4344547, at *7 (N.D. Ala. Sept. 13,

2012).

In this case, as set forth above, the ALJ noted Dr. Moizuddin's findings as set forth

in his report:

> Visual acuity – uncorrected corrected showed OD: 20/30, OS: 20/100, and
> OU: 20/30.  Exam of his neck was normal and lung auscultation showed no
> rales or rhonchi, no wheezing, and no rubs.  Heart auscultation showed normal
> S1 and S2, with no murmur, gallop, rubs, or clicks.  Muscle strength was 5/5
> in all groups and he could squat 3/4 way.  He was unable to heel walk, but
> could toe walk.  There was no cyanosis, clubbing, or edema in his extremities.
> Gait was normal and he used no assistive device.  Dr. Moizuddin noted the
> claimant's chronic neck pain with radiation to his left arm and need for a
> fusion.  He also noted degenerative disc disease, blindness in his left eye,
> anxiety, and depression, but did not opine the claimant experienced limitations
> that significantly limited his level of functioning (Exhibit B8F).

(Doc. 6-3 at 26.)  The ALJ summarized his findings regarding Mr. Garmon's credibility,

stating:

> The claimant's main problems seem to be related to his back pain.  While he
> has a history of surgeries for his back impairments, improvement was noted.

There is an extended period of time with no evidence of treatment. In fact, when the claimant returned for treatment, at least two of his treating sources noted he had not been seen for an extended period of time. Objective findings relevant to his alleged disability have also failed to support the severity of limitations he alleges, showing only mild and moderate limitations. The consultative examination by Dr. Moizuddin also failed to support significant limitations and those findings are accepted by the undersigned. It is also noted that Dr. Moizuddin did not suggest the claimant was experiencing significant functional limitations.

(*Id*. at 26-27.)

Mr. Garmon has not demonstrated that Dr. Moizuddin's report is subject to competing inferences or that the ALJ relied solely on Dr. Moizuddin's silence, ignoring other evidence, to determine Mr. Garmon's credibility. Indeed, the ALJ relied on medical records and diagnostic testing from Mr. Garmon's treating physicians and Mr. Garmon's reports of his daily activities, in addition to Dr. Moizuddin's consultative report, which, as the ALJ noted, does not contain any statement that Mr. Garmon had significant functional limitations ***and*** is inconsistent with a finding of significant limitations. Unlike *Lamb*, this is not a case in which one treating physician stated the claimant was unemployable and another treating physician said the claimant could not perform his past job, which the ALJ inferred mean he could perform other, light work – an inference the Eleventh Circuit found to be error. Rather, in this case, the ALJ inferred that Dr. Moizuddin found no significant functional limitations during his examination of Mr. Garmon because Dr. Moizuddin did not mention finding any significant functional limitations. Dr. Moizuddin's silence is not "equally susceptible" to a contrary inference – that, on examination, Dr. Moizuddin had found Mr.

Garmon had significant functional limitations that Dr. Moizuddin did not mention.  *See Lamb*, 847 F.2d at 703 (holding "silence is equally susceptible to either inference, therefore no inference should be taken").  Such an inference would not be reasonable in light of Dr. Moizuddin's report of his findings based on his examination of Mr. Garmon and would be contrary to other evidence in the record.  *See Clyburn*, 555 Fed. Appx. at 894; *Turner v. Astrue*, No. 808-CV-65-T-TBM, 2009 WL 804676, at *10 (M.D. Fla. Mar. 26, 2009).  A finding that Mr. Garmon does not have significant functional limitations beyond those set forth in the RFC is supported by substantial evidence in the record.

Therefore, the court finds no error in the ALJ's inference that Dr. Moizuddin did not find Mr. Garmon had significant functional limitations because Dr. Moizuddin did not include any statement of such a finding in his report.

## IV. <u>CONCLUSION</u>

Based on the reasons set forth above, the decision of the Commissioner, denying Mr. Garmon's claim for a period of disability, DIB, and SSI will be affirmed.  An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 28th day of June, 2016.


*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE